[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision Regarding Termination of Parental Rights
On January 10, 2001 this Court presided over a trial in the matter of CT Page 1270In re Jeffery L. Present in the courtroom were Assistant Attorney General Mildred Bauza, counsel for the Department of Children and Families, DCF, Attorney Lynn Dawson, counsel for the mother, Attorney Marcus Hallum, counsel for the father, Attorney Sylvia Harris, counsel for the minor child, and Deborah D'Aniello, social worker for the DCF.
Mother and father were not present in court for any portion of the proceedings.
The testimony and exhibits provided at this hearing provided the following procedural history. On November 25, 1998 the Superior Court for Juvenile Matters entered an order of temporary custody on behalf of Jeffrey L. The primary basis for action was an allegation that the child's custodial parent, Jean M, was unable to provide the medical care required for her infant son. The order was confirmed. On November 1, 1999 the court committed Jeffrey to the custody of the DCF. The child has been placed in various foster homes since that date.
The State introduced the following exhibit:
Exhibit A: Social Study in Support of the Petition for Termination of Parental Rights dated June 14, 2000.
Based on the testimony and documentary evidence presented, this Court makes the following findings:
A. There is clear and convincing evidence that the DCF has made reasonable efforts to locate the child's father.
Although Jeffrey's father was appropriately notified of the pending proceedings, he did not attend. DCF made every possible effort to maintain contact with this father, to no avail.
B. There is clear and convincing evidence that the DCF has made reasonable efforts to reunify the child with his parent.
In the present case, the DCF made reasonable efforts. However, because Jeffrey's father has abandoned his child and has not made himself available to either the court, the Department of Children and Families or counsel, the efforts were not successful.
C. There is clear and convincing evidence the following has existed:
 (1) Jeffrey has been abandoned by his father in the CT Page 1271 sense that his father failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child.
 (2) The child has previously been adjudicated neglected. His father has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the child, such parent could assume a responsible position in the life of the child.
Additionally, the court makes the following findings:
1 Appropriate and timely services were provided by the DCF to the father. These include services to benefit the child, referrals to deal with issues of parenting, visitation and case management services. Other than sporadic visits, this father has used none of the services provided.
2 DCF made reasonable efforts to reunify the family as far as possible. Although DCF offered a plethora of opportunities, this father was unable or unwilling to cooperate with the agency's efforts. This father has visited his child four times since the child's initial commitment. The last visit was in May 1999. Father has moved several times during the pendency of this action. He never provided either DCF or his counsel with his new location. Father's unavailability was the biggest barrier to reunification.
3 The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for Jeffrey's father. Jeffrey is a child with significant developmental delays, currently functioning at the level of a one-year-old child. There is no obvious medical cause for this impairment. Given the child's limitations, father's cooperation with individual and parenting counseling was critical. Unfortunately, he could not fulfill even the most minimal requirements.
4 The feelings and emotional ties of the child with respect to the parent, any guardian of the person andCT Page 1272 any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties. Jeffrey has been placed in a series of foster homes since his initial commitment. He most recently' changed foster homes in October and consequently has not formed a significant attachment to his current foster family. However it is equally true that he has not formed any attachment to his biological father. During their minimal interactions there was no parent-child bond.
5 Finding regarding the age of the child. Jeffery is currently two years old.
6 Finding regarding efforts of the parent to adjust his circumstances, conduct or conditions to make it in the best interests of the child to return him home in the foreseeable future and (A) the extent to which the parents have maintained contact with the child as part of an effort to reunite with the child. As detailed above, the court finds that Jeffrey's father has not made any changes in his life that would accommodate the care and nurturing of this child. Initially he visited Jeffery in a sporadic fashion and then not at all. He never sent any gifts or cards; he called seldom to inquire about his son. Although Jeffrey has significant developmental delays, his father never attended the child's therapy, never participated in medical evaluations, and was significantly absent from all administrative case reviews.
7 Finding regarding the extent to which the parent has been prevented from maintaining a reasonable relationship with the child by the unreasonable act or conduct of the other parent of the child or the unreasonable act of any other person. or by the economic circumstances of the parents. No such conduct is noted. DCF has taken many steps for many years to encourage this father to have a meaningful relationship with Jeffery and to rehabilitate himself.
Given the disruptive care arrangements this child has suffered while in his family of origin, it is important that he have certainty and stability. The court finds based upon the testimony and clear and CT Page 1273 convincing evidence presented that it would be in this child's best interest to terminate his father's parental rights. This finding is made after considering the child's sense of time, his need for a secure and permanent environment, the relationship that the child has with his foster family and his other developmental needs. The court finds from the totality of circumstances that the termination of parental rights is in this child's best interest.
It is accordingly, ORDERED that the parental rights of this father are hereby terminated.
The statutory parent for Jeffery L. shall be the Commissioner of the Department of Children and Families. A case plan must be filed on or about February 19, 2001.
Julia DiCocco Dewey, Judge. January 15, 2001